RENDERED: JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0686-ME

M.O.D.                                                          APPELLANT

|  | APPEAL FROM BARREN FAMILY COURT |
|---|---|
| v. | HONORABLE MICA WOOD PENCE, JUDGE |
|  | ACTION NO. 24-AD-00055 |

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND R.C.J., A
MINOR CHILD                                                    APPELLEES

AND

NO. 2025-CA-0689-ME

M.O.D.                                                          APPELLANT

|  | APPEAL FROM BARREN FAMILY COURT |
|---|---|
| v. | HONORABLE MICA WOOD PENCE, JUDGE |
|  | ACTION NO. 24-AD-00054 |

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND A.M.D., A
MINOR CHILD                                                    APPELLEES

AND

NO. 2025-CA-0690-ME

M.O.D.                                                                    APPELLANT

                                    APPEAL FROM BARREN FAMILY COURT
v.                              HONORABLE MICA WOOD PENCE, JUDGE
                                         ACTION NO. 24-AD-00056

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES AND M.G.D., A
MINOR CHILD                                                              APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  L. JONES, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE:  In these expedited, consolidated appeals, M.O.D. (Father)

appeals from the Barren Family Court's findings of fact, conclusions of law, and

judgments terminating parental rights to his three minor children, A.M.D. (Oldest

Child), M.G.D. (Middle Child), and R.C.J. (Youngest Child; collectively the

Children).  In accordance with *A.C. v. Cabinet for Health and Family Services*, 362

S.W.3d 361 (Ky. App. 2012), counsel for Father filed an *Anders*[1] brief asserting that there are no proper grounds for relief, along with motions to withdraw as counsel in each appeal. After careful review, we affirm the terminations and grant counsel's motions to withdraw via separate order.

Oldest Child was born in 2016. Middle Child was born in 2021. Youngest Child was born in 2023. The Children's mother tragically died soon after giving birth to Youngest Child. The Children were placed in the care of the Cabinet for Health and Family Services (the Cabinet) in May 2023, where they have since continuously remained.

The Cabinet filed petitions to involuntarily terminate Father's parental rights to the Children in September 2024. The family court conducted a final hearing on the Cabinet's petitions in April 2025.

At the hearing, Oldest Child's counselor testified that she initially diagnosed Oldest Child with failure to thrive, being developmentally delayed, and possibly being autistic. He displayed aggressive behavior and was not toilet trained, despite being about five years old, but he has made significant progress while in foster care. A psychologist who performed an assessment of Father in 2023 testified that he reported having used marijuana until about ten years

---

[1] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

previously and had used methamphetamine until around May 2023. A nurse practitioner who has treated Youngest Child nearly since birth testified that Youngest Child is developing normally.

The ongoing worker for the Cabinet who was assigned to these cases from May 2023 to May 2024 testified that Father's case plan included obtaining a mental health assessment, a substance use assessment, taking parenting classes, being drug screened as requested, attending visits with the Children, and cooperating with home visits. She testified that Father was mostly compliant. However, she related that visits were moved to the home Father shared with his mother after animals were present during a visit which occurred elsewhere. However, Father's mother smoked and there were concerns Youngest Child was not being fed properly during the visits. The worker admitted Father attempted to address concerns after being told of them. However, Father never seemed to understand why the Children had been removed from his care.

A former Cabinet social worker assigned to the case for several months in 2024 also testified. She agreed that Father had been mostly compliant with his case plan. However, she testified that Father tested positive for kratom[2] in

---

[2] According to the Food and Drug Administration (FDA):

> Kratom is a tropical tree (Mitragyna speciosa) that is native to Southeast Asia. Products prepared from kratom leaves are available in the U.S. online and in brick-and-mortar stores. Kratom is often used to self-treat conditions such as pain,

September 2024.  After the positive test, Father's visits with the Children became supervised.  She similarly testified that Father did not seem to understand the severity of the Children's needs and issues.

The Cabinet also presented the testimony of the social worker who has been assigned to the cases since September 2024.  She again outlined Father's case plan and stated he had mostly complied with it.  She explained that Father's visits with the Children were unsupervised but had to occur in public places due to the recurring issue of smoking in Father's home.

The social services worker stated that Oldest Child had been diagnosed with having developmental delays, failure to thrive, autism, and anxiety.  Oldest Child has made improvements while in foster care and is strongly attached to his foster parent(s).  Similarly, Middle Child was diagnosed with developmental delays and failure to thrive.  Despite being two when removed from Father's care, Middle Child could not then speak or walk at the time of removal.  Middle Child can now say some words and can walk.  By contrast, Youngest Child—who was never in Father's care—has no developmental delays and is doing well.

---

coughing, diarrhea, anxiety and depression, opioid use disorder, and opioid withdrawal . . . .

*FDA and Kratom*, U.S. FOOD AND DRUG ADMIN., https://www.fda.gov/news-events/public-health-focus/fda-and-kratom (last visited Dec. 15, 2025).  The former Cabinet employee testified similarly that kratom is available over the counter but acts like an opiate and can be addictive.

The witness was concerned about Father being able to provide adequately for the Children if they are returned to his care. She believed Father does not understand all that would be required of him to care properly for the Children. She also stated that Father had not followed all directives given to him, such as the recurring issue of exposing the Children to cigarette smoke.

She opined that Father had not shown the ability to provide the Children with essential parental care and protection or the necessities of life. She agreed that the Children had been in the Cabinet's care for at least fifteen of the forty-eight months preceding the filing of the termination petitions. She also testified that the Cabinet had provided Father with all reasonable services, though there had been difficulty in finding a proper family therapist.[3] She was unaware of any additional services the Cabinet could have provided to Father. The worker expressed her belief that it would be in the Children's best interests for Father's parental rights to be terminated. She believed Father "checked boxes" on his case plan but had not been able to translate the case plan into daily practice.

Father then presented the testimony of his brother and sister-in-law. They each generally testified that they were willing to help Father care for the Children and that he was a loving parent. However, Father's brother testified that

---

[3] Oldest Child's individual therapist also was the family therapist for a time but ceased performing those dual roles because doing so negatively impacted Oldest Child's participation in individual therapy.

he did not know why Father did not recognize the older two children's obvious developmental delays. Father's sister-in-law admitted she had not known that Father was abusing illegal substances.

Father was the final witness. Father stated that the older two of his children were removed from his care about two days after their mother had died. He had been arrested for possession of methamphetamine at that time, for which he was on probation. Father believed the arrest was the reason for the removals. Father had completed his case plan. He had thought kratom was akin to an energy drink and had stopped taking it after learning of the Cabinet's disapproval.

Father admitted missing some of the Children's medical visits, but insisted it was for work-related reasons. Father did not complete high school and had not obtained a G.E.D. The lack of a high school diploma had limited Father's work options, but he had tried to maintain employment.

Father testified he did not know the Children were failing to thrive when in his care, nor did he understand the meaning of that term. He thought Middle Child's developmental delays were due to being born prematurely. He did not find it especially odd that Oldest Child had not been toilet trained at age five.

Father had moved into a home with his mother about six or seven months ago. Prior to then, he had lived in a motel for about two years. He, the

Children's mother, Oldest Child, and Middle Child had shared a single motel room which contained only two beds and did not have a kitchen.

According to Father, neither Oldest Child nor Middle Child had significant problems when removed from his care. He knew Middle Child had some developmental delays, such as not being able to walk or speak. But he did not believe it was a problem that she could not do so at age two. He explained that he had overcome his developmental delays and thought his children would as well. Finally, he testified that he did not know what autism meant.

The family court took the three petitions under advisement at the close of the hearing. Ultimately, the court granted all three. Father then filed these three appeals, one for each child, which we have ordered to be consolidated.

Terminating parental rights "is a scrupulous undertaking that is of the utmost constitutional concern." *Cabinet for Health and Family Services v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014). Before parental rights may be involuntarily terminated, there must be clear and convincing evidence sufficient to satisfy the three-part test set forth in Kentucky Revised Statute (KRS) 625.090:[4] "(1) the child is found or has been adjudged to be an abused or neglected child . . . ; (2) termination of the parent's rights is in the child's best interests; and (3) at least one

---

[4] The termination hearing was held prior to the amendments to KRS 625.090 which became effective in late June 2025. Thus, we use the former version of the statute.

of the termination grounds enumerated in KRS 625.090(2) . . . exists." *K.H.*, 423

S.W.3d at 209. *Clear and convincing evidence* "does not necessarily mean

uncontradicted proof. It is sufficient if there is proof of a probative and substantial

nature carrying the weight of evidence sufficient to convince ordinarily prudent-

minded people." *Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d

658, 663 (Ky. 2010) (internal quotation marks and citations omitted).

Because "the trial court has wide discretion in terminating parental

rights . . . our review is limited to a clearly erroneous standard which focuses on

whether the family court's order of termination was based on clear and convincing

evidence." *K.H.*, 423 S.W.3d at 211. Under that tightly circumscribed standard,

we afford "a great deal of deference to the family court's findings" and may not

"interfere with those findings unless the record is devoid of substantial evidence to

support them." *Id.* (internal quotation marks and citation omitted). "When

reviewing a family court's determination of the best interests of a child, we must

apply the abuse of discretion standard." *D.J.D. v. Cabinet for Health and Family

Services*, 350 S.W.3d 833, 837 (Ky. App. 2011).

Counsel for Father filed an *Anders* brief stating that there are no

grounds to challenge the trial court's judgment. We afforded Father the

opportunity to submit a *pro se* brief, but he did not do so. Nonetheless, "we are

obligated to independently review the record and ascertain whether the appeal is, in fact, void of nonfrivolous grounds for reversal."[5] *A.C.*, 362 S.W.3d at 372.

The family court made the findings required in KRS 625.090 by clear and convincing evidence. Substantial evidence supports those findings.

First, though not explicitly mentioned in the family court's decision, the record shows that Father stipulated to neglect in the dependency, neglect, and abuse proceedings. *See* KRS 625.090(1)(a)1.

Second, the family court's conclusion that termination of Father's parental rights was in the Children's best interests is supported by substantial evidence and was not an abuse of discretion under these facts. However, our ability to expeditiously review the best interests finding is hampered by the fact that the family court did not expressly consider some of the best interest factors found in KRS 625.090(3). Instead, the decisions generically state that "[a]ll the factors in KRS 625.090(3) were considered." It would be better practice to explicitly address all the relevant factors in KRS 625.090(3).

KRS 625.090 provided that:

(3) In determining the best interest of the child and the existence of a ground for termination, the Circuit Court shall consider the following factors:

---

[5] Even briefs in *Anders* cases must comply with the briefing requirements found in the Kentucky Rules of Appellate Procedure (RAP). We <u>strongly</u> disapprove of the Cabinet's <u>complete</u> failure to cite to the written or video record in its Appellee brief. *See* RAP 32(B). We have leniently elected to not impose sanctions, but caution counsel to not expect such leniency again.

-10-

(a) Mental illness as defined by KRS 202A.011(9), or an intellectual disability as defined by KRS 202B.010(9) of the parent as certified by a qualified mental health professional, which renders the parent consistently unable to care for the immediate and ongoing physical or psychological needs of the child for extended periods of time;

(b) Acts of abuse or neglect as defined in KRS 600.020(1) toward any child in the family;

(c) If the child has been placed with the cabinet, whether the cabinet has, prior to the filing of the petition made reasonable efforts as defined in KRS 620.020[6] to reunite the child with the parents . . . ;

(d) The efforts and adjustments the parent has made in his circumstances, conduct, or conditions to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child;

(e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered; and

(f) The payment or the failure to pay a reasonable portion of substitute physical care and maintenance if financially able to do so.

---

[6] KRS 620.020(13) defines *reasonable efforts* as "the exercise of ordinary diligence and care by the department to utilize all preventive and reunification services available to the community . . . which are necessary to enable the child to safely live at home[.]"

There are indications in the record that Father suffers from intellectual difficulties. However, there is not a mental health diagnosis of Father by a qualified professional. From the testimony, it appears as if Father had difficulty understanding what was required to properly parent the Children. However, the lack of an explicit diagnosis by a mental health professional of Father renders this factor largely inapplicable.

There are no allegations Father physically abused the Children. However, there are indications he neglected the Children. Father and the older two children lived in substandard, inappropriate housing, and both of those children were diagnosed with failure to thrive. There was also testimony that the Cabinet was concerned that youngest child was not fed properly during visits with Father.

The main factor Father apparently wishes to contest is whether the Cabinet made "reasonable efforts" to reunite the Children with him. The family court found that the Cabinet had done so. That finding is supported by substantial evidence in the form of the unrebutted testimony of the current worker assigned to the cases. Father has pointed to no specific additional services the Cabinet could have rendered to him.

Perhaps the Cabinet should have more quickly arranged for Father and the Children to resume family therapy, but we conclude the delay in doing so does not entitle Father to relief. Resuming family therapy more quickly would likely

have been beneficial, but it would not reasonably likely have meaningfully altered the outcome of the termination proceedings under these facts.

The next statutory factor is whether Father had adjusted "to make it in the child's best interest to return him to his home within a reasonable period of time, considering the age of the child . . . ." KRS 625.090(3)(d). Father had complied with his case plan. However, he also had not managed to adjust sufficiently to allow the Children to visit with him at his home due to smoking. This factor does not entitle Father to relief.

Next, a court must consider the Children's physical, emotional, and mental health. There was substantial testimony that the older two children had severe developmental issues while in Father's care but had made significant physical progress while in foster care. Oldest Child became toilet trained. Middle Child had learned to walk and talk. The Children had bonded with their foster families. The family court found that the Children had made substantial improvements while in foster care and are expected to improve further if Father's parental rights were terminated. That finding is supported by substantial evidence.

The final statutory best interest factor is whether Father had paid "a reasonable portion of substitute physical care and maintenance if financially able to do so." KRS 625.090(3)(f). There was virtually no relevant testimony on this

factor. One Cabinet worker testified that Father claimed he had paid child support, but the worker had not taken steps to verify that claim.

"[T]he court's factual findings are sufficient if they identify evidence of record to show that it complied with the statutory requirements and to allow for meaningful appellate review." *D.H. v. Cabinet for Health and Family Services*, 640 S.W.3d 736, 740 (Ky. App. 2022). On balance, though it would have been better if the family court had made additional express findings regarding the statutory best interest factors, we conclude the family court's findings were minimally adequate under these facts.

We discern no abuse of discretion in the family court's bottom-line finding that the Children's best interests favor terminating Father's parental rights. Our conclusion is based on the lengthy testimony at the hearing about the issues the older two children had experienced when in Father's care and the strides they had made to overcome those issues since entering foster care. Comparing the stark differences between the older two children's abilities and development while in Father's care versus their status while in foster care supports an inference that their developmental delays and other concerns while in Father's care may be reasonably attributed, in whole or part, to Father's inability to care adequately for the older two children. By contrast, Youngest Child—who was never in Father's care—had no developmental delays, thereby giving rise to the reasonable inference that at

least some degree of the developmental delays experienced by the older two children stemmed from Father's not providing appropriate parental care and protection to them.

Moreover, though Father's compliance with the case plan is commendable, he was unable to implement the goals of the case plan into his daily parenting. For example, Father was not able to make sufficient adjustments to allow visitation to occur at his home. Cabinet workers who had been assigned to the case testified that Father did not seem to comprehend the Children's ongoing needs or the older two children's significant developmental delays. There was no evidence that Father reasonably would be expected to improve in his ability to understand, and meet, those needs in the future.

As to the final factor in a termination analysis, it is uncontested that the Children were in foster care for fifteen of the forty-eight months preceding the filing of the termination petition (from May 2023 to September 2024). *See* KRS 625.090(2)(j). Accordingly, we decline to address other potential grounds of parental unfitness. *T.N.H.*, 302 S.W.3d at 663.

Finally, though not addressed by the parties, we note that the termination decisions were not issued within the six-month statutory deadline for such decisions. The Cabinet's termination petitions were filed on September 15, 2024. Father was served with the petitions on September 27, 2024. The final

termination hearing was held almost seven months later, on April 28, 2025. The termination orders were signed and filed on May 14, 2025. Thus, it took nearly eight months from the date Father was served with the petitions for the family court to issue its final termination judgments.

KRS 625.050(7) (now 625.050(7)(b)) required a termination petition to be "fully adjudicated . . . within six (6) months of the service of the petition on the parents."[7] There is no indication Father objected to the tardiness. As such, he has waived the issue. Moreover, laying aside any potential separation of powers issues stemming from the legislative branch attempting to set a firm deadline for a court to issue a decision, we discern no obvious prejudice to Father stemming from the family court's unfortunate failure to resolve the termination petitions before expiration of the statutory deadline. *See, e.g.*, *H.E. v. Cabinet for Health and Family Services*, No. 2022-CA-0103-ME, 2022 WL 7753775, at *3 (Ky. App. Oct. 14, 2022) (unpublished) (finding a failure to issue a termination decision within the statutory deadline to be a harmless error).[8]

In conclusion, we are acutely aware that cases involving petitions to terminate parental rights are inherently complex and emotional. We respect

---

[7] As with KRS 625.090, we apply the version of KRS 625.050 which was in effect during the proceedings in family court.

[8] We are aware that *H.E.* is not binding authority; we cite it only to show that our conclusion in the cases at hand is consistent with how we have previously handled similar situations.

Father's compliance with his case plan and do not question his love for the Children. However, the record shows that he was unable to meet the Children's daily needs and did not grasp the developmental delays displayed by the older two children when they were removed from his care. The family court's conclusions are based on substantial evidence and are neither clearly erroneous nor an abuse of discretion. Therefore, we affirm the family court's decisions terminating Father's parental rights to the Children. We shall grant Father's counsel's motions to withdraw via separate order.

For the foregoing reasons, the Barren Family Court is affirmed in all three appeals.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Jeff Sharp
Glasgow, Kentucky

BRIEF FOR APPELLEES:

Dilissa G. Milburn
Mayfield, Kentucky